Cyril J. Burke v. Commissioner.
Burke v. Commissioner
Docket No. 9088.
United States Tax Court
1947 Tax Ct. Memo LEXIS 309; 6 T.C.M. (CCH) 141; T.C.M. (RIA) 47032; February 17, 1947
Elorion Plante, C.P.A., 2537 Book Tower, Detroit 26, Mich., for the petitioner. Frank M. Cavanaugh, Esq., for the respondent. MURDOCK
Memorandum Findings of Fact and Opinion The Commissioner determined a deficiency in income tax of $20,827.87 for the calendar year 1941. He held that income in the amount of $49,721.74, which had been reported on a partnership return under the name of Cyril J. Burke - Construction Machinery and Supplies showing one-half distributable to the petitioner and one-half to his wife, was all taxable income of the petitioner. One of the errors assigned is the failure of the Commissioner to recognize a partnership between the petitioner and his wife. The other assignment of error is based upon the disallowance *310 of a deduction of $12,870.68 claimed as a bad debt due from Weir Construction Company. Findings of Fact The petitioner is an individual who filed his return for the calendar year 1941 with the collector of internal revenue for the district of Michigan. His wife's name is Marie E. Burke. The petitioner is a graduate civil engineer. He worked for a number of years for an engineering company in various places in the United States. His business since he went with that company has been that of distributing, selling, and servicing heavy construction equipment. The petitioner was married in July 1922. He was working on a salary and commission basis at that time. He had saved about $9,000 represented by cash in a bank. He told his wife that their living, household, and other expenses would be paid from his salary and she could have for her own, without restrictions, his commissions. A bank account was opened in the name of the wife in which the petitioner deposited his commissions for a short while after his marriage. A joint account in the name of the petitioner and his wife was opened not long after their marriage and thereafter all commissions were deposited in that account. No *311 withdrawals were made from that account except for the purpose of buying securities consisting of stocks or bonds. The record does not show how much was invested from this account in securities, in whose name any of the securities were registered, or what securities were purchased. The company for which the petitioner was working in 1926 decided to discontinue the branch office where he was employed and he decided to go into business for himself at that time. He had about $10,000 in cash in his own name, about $50,000 or $55,000 of his commissions had been saved and was then either represented by cash in the accounts mentioned above or by securities purchased from funds deposited in those accounts. The petitioner's wife has had no business experience or training. They had a discussion in 1926 as to whether the wife would care to go into business with the petitioner using the funds which had accumulated through the saving and investment of his commissions. They then agreed orally that they were to have equal interests in the business which was about to start. The wife was not to take and did not take an active part in the business thereafter conducted by the petitioner. The record *312 does not show to what extent capital was essential to or an important income producing factor in that business, what capital was actually used in the business, or what, if anything, was done at that time or later with funds in the joint bank account or with any securities which may have been purchased up to that time from the petitioner's commissions. It does not show whether or not any account was kept on the books of the business in the name of the petitioner's wife up to and including the taxable year. The petitioner began to do business in 1926 and has since continued under the name of Cyril J. Burke - Construction Machinery and Supplies. Three persons were employed in the business in 1941. The books of Cyril J. Burke - Construction Machinery and Supplies reflect a number of withdrawals by Marie E. Burke during the calendar year 1941, the total of which withdrawals was $5,631.69. Each withdrawal was made by drawing a check on a Detroit bank signed Mr. Cyril J. Burke, by Mrs. Cyril J. Burke. Cyril J. Burke, in drawing checks upon this account, signed his name to the checks. The petitioner, on various forms which he was required to file under oath, stated that the business *313 was owned and operated solely by him. The petitioner never notified any person with whom he did business that his wife was a partner at any time up to and including the taxable year, except in one instance in 1940. A list of bad debt deductions claimed on the partnership return filed for 1941 includes a debt due from Weir Construction Company in the amount of $12,870.68. $6,958.72 of the above amount was represented by unsecured notes of the debtor dated June 1, 1940. The balance of the debt was represented by an unsecured open account in the name of the debtor. The Weir Construction Company was engaged in building and improving streets and highways. It was a corporation owned by Francis F. Weir who devoted his time to its affairs. The debts of the corporation exceeded its assets in 1941. Some of the debts were secured. Efforts were made in 1941 to carry out a plan under which 50 per cent would be paid on the unsecured debts and 85 per cent on the secured debts, but the secured creditors did not agree and the plan was abandoned. The corporation was not engaged in performing work under any construction at the close of 1941. The Weir Construction Company had assets at the close *314 of 1941 which were not subject to any preferred claims, and it had unsettled claims at that time for amounts allegedly due it for work performed. The debts due to the petitioner from Weir Construction Company did not become worthless during 1941. The petitioner received a payment of 10 per cent on this indebtedness in 1942. That was the only payment which he ever received. He deducted on his return for 1942 as a worthless debt the unpaid balance of the indebtedness. The Commissioner, in determining the deficiency, taxed all of the income of the business to the petitioner with the explanation that all of that income was taxable to him under section 22 (a) of the Internal Revenue Code. The deduction of $12,870.68 claimed as a worthless debt due from Weir Construction Company was disallowed because there had been no satisfactory showing that the debt became worthless or partially worthless in 1941. The stipulation of facts is incorporated herein by this reference. Opinion MURDOCK, Judge: The petitioner contends that he and his wife were equal partners in the conduct of the construction machinery and supplies business during the calendar year 1941, and only *315 one-half of the income of that business was taxable to him. The alleged understanding between the petitioner and his wife during that period was not incorporated in any written agreement then in existence. Their agreement is alleged to have been reached orally by the petitioner and his wife in 1926 when he ceased to be an employee. It is conceded that the wife was not qualified to take, and did not take, an active part in the business thereafter conducted. Some effort was made to show that she was consulted occasionally, but the record fails to show that she ever made any real contribution to the business even in an advisory capacity. The petitioner testified that he put about $10,000 into the business and his wife put $50,000 or $55,000 into the business. But neither he nor his wife explained what was meant by such a statement. The petitioner claims that his wife had saved between $50,000 and $55,000 from commissions which he had earned prior to 1926 and which he had given to her to be hers exclusively. The record shows that most of the commissions were placed in a joint account in the name of the petitioner and his wife. The record does not show the total commissions deposited *316 up to the time in 1926 when the petitioner ceased to be an employee. The petitioner and his wife testified that some of the funds were withdrawn to buy stocks and bonds, but neither could state just how much had been withdrawn for such purposes, when the funds had been withdrawn, what securities or what amount of securities had been purchased with any of the funds, or the name or names in which any particular security purchased had been registered. Neither does the record show what was done with any securities which may have been purchased from funds in the accounts mentioned, where they were kept, or where they are now. The record does not show what amount of capital was needed in the business or was used in the business in 1926 or later. It does not indicate that any funds or securities were transferred in any way to the business. There is no showing that any funds in the joint bank account or any securities purchased from that bank account were ever liable for any of the debts of the business. The petitioner stated under oath on a number of occasions from 1926 to the end of the taxable year that he individually owned the business, and it does not appear that he ever disclosed *317 to any person with whom he did business that his wife had any interest in the business, except for a statement made to one manufacturer which he was going to represent. He testified that his reason for stating that he was the individual owner of the business was that a partnership between a husband and wife is not recognized under the laws of Michigan and, therefore, he was forced to state that he was the individual owner of the business. It appears that a large part, if not all, of the earnings of the business were due primarily to the personal ability and activity of the petitioner. The record does not show that the petitioner and his wife carried on business as real partners or that the Commissioner erred in taxing all of the earnings of the business to the petitioner. The only other issue is whether a bad debt was deductible in its entirety in 1941. The law applicable to that year provides that a deduction shall be allowed for "debts which become worthless within the taxable year", and it also provides that "when satisfied that a debt is recoverable only in part, the Commissioner may allow such debt, in an amount not in excess of the part charged off within the taxable year, *318 as a deduction." The petitioner makes no claim under the latter provision but bases his contention entirely upon the proposition that the debt became entirely worthless within the taxable year. The evidence fails to show that the debt became entirely worthless in 1941 and it does not show the extent to which it was worthless at the end of that year. The petitioner received a partial payment on the debt in the following year and deducted the unpaid balance on the return for 1942. The record does not show whether or not this debt or any portion of it was charged off the books of the business kept in 1941. The Commissioner did not err in failing to allow a deduction for the entire debt for 1941. Decision will be entered for the respondent.